# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TODDLE INN FRANCHISING, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   2:18-cv-00293-JDL |
| KPJ ASSOCIATES LLC, et al., | ) |
| | ) |
| | ) |
|     Defendants. | ) |

## ORDER DENYING THE PLAINTIFF'S MOTION
## FOR A TEMPORARY RESTRAINING ORDER

This matter is before the Court on a Motion filed by Toddle Inn Franchising, LLC ("Toddle Inn") seeking a Temporary Restraining Order (ECF No. 3) pursuant to Fed. R. Civ. P. 65(b).

### I. FACTUAL BACKGROUND

Toddle Inn's motion and supporting documents assert that Toddle Inn and its affiliate, Toddle Inn Daycare, Inc., have developed a system related to the establishment, development, and operation of businesses providing educational and daycare services for young children. Toddle Inn grants qualified persons the right to own and operate daycare centers under the Toddle Inn name. *See* ECF No. 3 at 1. The Defendants, KPJ Associates, LLC, Kathie L. Murphy, Patrick M. Murphy, and James O. Haskell, (collectively, "KPJ") are former franchisees of a Toddle Inn daycare center in Kennebunk, Maine (the "Kennebunk daycare center"). *See* ECF No. 3 at 2.

Toddle Inn and KPJ entered into a Franchise Agreement which was effective on July 19, 2006. Among other things, the agreement defined and protected the Toddle Inn system for operating a daycare center, detailed the required specifications

for a Toddle Inn daycare center, and imposed a non-competition provision that prohibited KPJ from operating a daycare center with a 50-mile radius of the Kennebunk daycare center for two years after the expiration or termination of the agreement. The Franchise Agreement was effective for an initial term of ten years, subject to renewal.

KPJ did not renew the agreement in July, 2016, although it continued to operate the Kennebunk daycare center and pay royalties to Toddle Inn for the ensuing two years. *See* ECF No. 3 at 5. On July 27, 2018, KPJ informed Toddle Inn by a letter that KPJ would resign as a Toddle Inn daycare center effective at 6 p.m. that evening, and that it would open and operate a daycare center known as the Kennebunk Children's Academy from the same Kennebunk location beginning on July 30, 2018. *See id.* at 7.

Toddle Inn filed this action on July 31, 2018, and also moved for a Temporary Restraining Order requiring KPJ to (1) immediately cease managing, operating, and/or owning an interest in a daycare center within 50 miles of the former Toddle Inn daycare center in Kennebunk; (2) immediately authorize Toddle Inn to take ownership and oversee the operation and management of the former Toddle Inn daycare center or absorb the students at other Toddle Inn locations; (3) immediately stop using Toddle Inn's system, marks, and confidential information; (4) immediately stop holding itself out to the public as a former Toddle Inn franchisee; (5) pay all sums owing to Toddle Inn within five days; (6) provide Toddle Inn with all previously requested books and records, including tax returns, within five days; (7) return all records, files, instructions, brochures, agreements, disclosure statements, and any

and all other materials provided by Toddle Inn to KPJ related to the operation of the daycare center, including a manual, within five days; and (8) submit an affidavit within ten days certifying compliance with the above requirements. *See id.* at 11-12. A hearing on the Motion was held on July 31, at which Attorney Seth Brewster, Esq. appeared on behalf of KPJ.

## II. LEGAL ANALYSIS

In considering a request for a temporary restraining order, the court must determine: "(1) the movant's likelihood of success on the merits; (2) whether and to what extent the movant would suffer irreparable harm if the request were rejected; (3) the balance of hardships between the parties; and (4) any effect that the injunction or its denial would have on the public interest." *Wicked Good Charcoal, Inc. v. Ranch-T, LLC*, No. 2:15-cv-00528-JDL, 2015 WL 9581739 at *1 (D. Me. Dec. 30, 2015) (quoting *Díaz-Carrasquillo v. García-Padilla*, 750 F.3d 7, 10 (1st Cir. 2014)); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996).

1.  **Likelihood of Success on the Merits**

Based on the facts alleged at this preliminary stage, Toddle Inn has not established a likelihood of success on the merits.

The Franchise Agreement expired by its own terms on July 19, 2016. Thereafter, KPJ continued to pay royalties to Toddle Inn and abided by some of the other terms of the Franchise Agreement,[1] but did not abide by other terms of the

---

[1] Cheryl Carrier stated in her Declaration that after July 19, 2016, Toddle Inn continued to permit KPJ to use its system and marks, and KPJ continued to make royalty payments as required by the agreement, and that KPJ continued to operate under the Toddle Inn name and use Toddle Inn logos, uniforms, and designs. She also stated generally, and without reference to any specific event, that KPJ's counsel continued to reference the Franchise

3

agreement. A key piece of evidence in this regard is a letter from Beth LaSalle, Toddle Inn's Chief Operating Officer, to KPJ dated March 23, 2018, which is an exhibit to Ms. LaSalle's Declaration. The letter states, among other things, that KPJ (1) had "been operating as a franchise at will operation" after the parties' franchise agreement expired on July 19, 2016; (2) was in default of various requirements of the agreement; and (3) was not eligible to renew the agreement until it brought itself into full compliance with the agreement. *See* ECF No. 3-5. These statements conflict with the assertion made in the LaSalle Declaration that although the Franchise Agreement had expired, "Toddle Inn and KPJ nevertheless continued their relationship with an understanding that the Franchise Agreement remained in effect." *See* ECF No. 3-4 at ¶ 7. Similarly, the statements do not comport with the assertion in the Declaration of Cheryl Carrier, President of Toddle Inn, that "[n]otwithstanding the Franchise Agreement's expiration provision, Toddle Inn and KPJ understood that the Franchise Agreement continued to apply after July 19, 2016." *See* ECF No. 3-1 at ¶ 11. Neither the LaSalle nor the Carrier declarations assert that KPJ made any specific representations that would establish that KPJ believed that it was bound to the terms of the Franchise Agreement after the agreement expired in 2016.

Accordingly, Toddle Inn has not demonstrated at this early stage that it is likely to succeed on its claims premised on the notion that all of the terms of the

---

Agreement as governing the relationship between the parties, and that KPJ did not express a desire or intent to terminate or modify the terms of the Franchise Agreement or their relationship with Toddle Inn. The Declaration does not explain the context nor cite to any documents in which KPJ's counsel referred to the Franchise Agreement as governing the parties' relationship.

4

Franchise Agreement remained in effect after the agreement expired in July, 2016. This is especially true as to the non-competition clause in the agreement, which is at the heart of Toddle Inn's claims. "Under Maine law, non-competition agreements are contrary to public policy and will be enforced only to the extent that they are reasonable." *Everett v. J. Prescott Ross*, 383 F. Supp. 2d 180, 190 (D. Me. 2005) (internal quotation marks omitted). The facts presented do not establish that there were any communications between the parties regarding extending the non-compete period beyond the two-year period that began on July 19, 2016, the date the agreement itself expired. Thus, it is not reasonable to infer that KPJ implicitly agreed to extend the non-compete clause so that the clause operates to bar KPJ's launch of the Kennebunk Children's Academy two years later.

Toddle Inn's additional claims that KPJ may be misappropriating and unlawfully using the Toddle Inn system by continuing to occupy the Kennebunk daycare center (which, Toddle Inn claims, was built and furnished to its specifications and should be treated as part of the Toddle Inn's system) and continuing to employ employees previously trained in the Toddle Inn system, may have merit. However, there is no proof of the extent to which this is the case. Because the assertions regarding possible misappropriation and unlawful use made in the LaSalle and Carrier declarations are general and nonspecific, there is insufficient evidence before the court with which to determine the likelihood that Toddle Inn will succeed on these claims. Similarly, Toddle Inn's assertion that KPJ may have misappropriated its trade secrets or confidential information is unsupported by any details as to the secrets or information at issue.

I conclude that Toddle Inn has not met is burden of establishing a likelihood of success on the merits.

**2.    Irreparable Harm**

Based on my analysis of the likelihood of success on the merits, I also conclude that Toddle Inn will not suffer irreparable harm absent a Temporary Restraining Order. If it is later determined that KPJ has breached the Franchise Agreement or is otherwise liable to Toddle Inn, Toddle Inn may be made whole by an award of money damages.

**3.    Balance of Hardships**

The balance of hardships weighs in KPJ's favor. If a TRO is entered in favor of Toddle Inn, it is possible that the Kennebunk daycare center would be shuttered and its clients would be absorbed at other Toddle Inn locations. Thus, KPJ may lose its clientele. Toddle Inn has not identified any hardships of a similar magnitude weighing in its favor.

**4.    Public Interest**

At the hearing, KPJ represented that approximately 50 families currently use the Kennebunk daycare center for childcare. Toddle Inn expressed interest in taking over the facility to ensure its continued operation, but the lease is held by KPJ. Although Toddle Inn represented that if the Kennebunk daycare center closed as a result of a Temporary Restraining Order it would be able to absorb the children of the 50 families at its Saco, Scarborough, and Westbrook Toddle Inn locations, the practicality of that alternative is unknown. A daycare facility's proximity to a family's home or caregiver's workplace is often a major factor in deciding which

daycare provider the family will use. Thus, a Temporary Restraining Order would likely disrupt the childcare arrangements of many of the approximately 50 families that currently patronize the Kennebunk daycare center, and, as noted, the practicality of moving the children to another Toddle Inn facility is undetermined. Thus, the public interest weighs against the granting of a Temporary Restraining Order.

### III. CONCLUSION

For the foregoing reasons, I **DENY** the Motion for a Temporary Restraining Order (ECF No. 3).

**SO ORDERED.**

**This 2nd day of August, 2018.**

                                           **/s/ JON D. LEVY**
                                           **U.S. DISTRICT JUDGE**