UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| TODDLE INN FRANCHISING, LLC, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) 2:18-cv-00293-JDL ) |
| KPJ ASSOCIATES, LLC, et al., | ) ) |
| Defendants. | ) |

### ORDER ON PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND TO STAY PENDING ARBITRATION

Plaintiff Toddle Inn Franchising, LLC ("Toddle Inn") moves pursuant to 9 U.S.C.A. §§ 2-4 (West 2018) to compel arbitration of its claims against Defendants KPJ Associates, LLC, Kathie L. Murphy, Patrick M. Murphy, and James O. Haskell (collectively, "KPJ"), and to stay this litigation pending arbitration (ECF No. 16). For the reasons explained below, I grant the motion.

### I. FACTUAL BACKGROUND

Toddle Inn and its affiliate, Toddle Inn Daycare, Inc., operate a franchise business that grants franchisees the right to own and operate daycare centers under the Toddle Inn name. On July 19, 2006, Toddle Inn entered into a Franchise Agreement with KPJ Associates, LLC, which granted KPJ Associates the right to own and operate a Toddle Inn daycare center in Kennebunk. The terms of the Franchise Agreement provided that it would expire ten years from the date it was executed, subject to renewal by the parties.

1

The Franchise Agreement also includes an arbitration provision, Section 22.7, titled "Arbitration" ("the Arbitration Clause"), which provides that all disputes between the parties will be arbitrated. It states in relevant part:

> All disputes between or among the parties whether now existing or arising in the future, including without limitation, any and all claims, defenses, counterclaims, cross claims, third party claims and intervenor claims, whether or not arising from or related to the negotiation, execution and performance of this agreement or the transaction to which this agreement relates shall be settled by arbitration under the Federal Arbitration Act, as amended, in accordance with the Commercial Arbitration Rules of the American Arbitration Association or any successor body thereto, before a single arbitrator agreed upon by the parties hereto.

ECF No. 3-2 at 37 (all capitalization removed). Section 22.8, titled "Injunctive Relief" ("the Injunctive Relief Clause") preserves Toddle Inn's rights, as the Franchisor, to pursue injunctive relief:

> Notwithstanding the Arbitration Clause in Section 22.7, Franchisor may bring an action for injunctive relief in any court having jurisdiction to enforce the Franchisor's non-competition trademark, and/or proprietary rights, in order to avoid irreparable harm to the Franchisor, its affiliates, or the franchise system as a whole.

*Id.* at 38 (all capitalization removed).

A separate provision of the Franchise Agreement, Section 22.3, titled "Cumulative Rights and Remedies," similarly states that nothing in the agreement bars the Franchisor's right to obtain injunctive relief, and that no right or remedy that the agreement confers is exclusive of any other. *Id.* at 36. Finally, Section 17.6, titled "Survival of Certain Provisions" ("the Survival Clause"), provides that "[a]ll obligations of Franchisor and Franchisee which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect

subsequent to and notwithstanding their expiration or termination and until satisfied or by their nature expire." *Id.* at 27.

KPJ Associates did not renew the Franchise Agreement after it expired by its terms on July 19, 2016, but it continued to operate the Kennebunk daycare center under the Toddle Inn name and pay royalties to Toddle Inn for the next two years. On Friday, July 27, 2018, KPJ informed Toddle Inn by a letter that KPJ would resign as a Toddle Inn daycare center effective that evening and would launch a daycare center known as the Kennebunk Children's Academy from the same Kennebunk location beginning on Monday, July 30, 2018.

On July 31, 2018, Toddle Inn filed this action seeking to enjoin KPJ from violating the post-termination provisions of the parties' Franchise Agreement, including the non-compete clause. The complaint seeks an injunction requiring, among other things, that KPJ Associates "[p]ay all sums owing to Toddle Inn within 5 days of the Court's order." Also, on July 31, Toddle Inn moved for a temporary restraining order. After a hearing, I denied Toddle Inn's motion for a temporary restraining order ("TRO") by an order dated August 2, 2018. On August 27, Toddle Inn filed its motion to compel arbitration and to stay these proceedings pending arbitration.

## II. LEGAL ANALYSIS

The Arbitration Clause in the parties' Franchise Agreement is governed by the Federal Arbitration Act (FAA). *See generally* 9 U.S.C.A. §§ 1-16 (West 2018). "Federal courts will grant a motion to stay a case and compel arbitration pursuant to

3

the FAA when '(i) there exists a written agreement to arbitrate, (ii) the dispute in question falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" *United States v. Consigli Constr. Co.*, 873 F. Supp. 2d 409, 412 (D. Me. 2012) (quoting *Combined Energies v. CCI, Inc.,* 514 F.3d 168, 171 (1st Cir. 2008)). Toddle Inn and KPJ do not dispute that there is a written agreement to arbitrate, but they do disagree as to whether that agreement is still in effect and binding.

Even after a contract has terminated or expired, there is "a presumption in favor of postexpiration arbitration of matters unless 'negated expressly or by clear implication,'" as long as those "matters and disputes aris[e] out of the relation governed by contract." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.,* 501 U.S. 190, 204 (1991) (quoting *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977)). Furthermore, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, (2006).

Because the validity of the contract as a whole is a question for the arbitrator, I do not address it here. Rather, assuming that the contract expired in July 2016, I address (1) whether the presumption in favor of postexpiration arbitration of the parties' dispute has been negated expressly or by clear implication; (2) whether the dispute falls within the scope of the arbitration agreement; and (3) whether Toddle Inn has waived its right to arbitration.

4

## A. Presumption in Favor of Postexpiration Arbitration

The First Circuit has adopted a two-prong analysis for deciding the postexpiration arbitrability of disputes. *South Bay Boston Mgmt. v. Unite Here, Local 26*, 587 F.3d 35, 43 (1st Cir. 2009). The court must first "determine if the particular dispute has its real source in the contract," and if it does, second, the court "must consider whether postexpiration arbitration of the issue was negated expressly or by clear implication." *Id.* When deciding whether the parties agreed to arbitrate a particular dispute, any "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995)).

Here, the parties' dispute stems from the post-termination provisions of the Franchise Agreement, including the non-compete provision in Section 17.2 and KPJ's alleged ongoing use of Toddle Inn's equipment and confidential information. *See* ECF No. 1 at ¶¶ 47, 53. The rights that Toddle Inn seeks to vindicate arise from the Franchise Agreement. The parties' dispute, therefore, arises from their contract.

With respect to the second prong, the Franchise Agreement does not expressly negate postexpiration arbitration. Therefore, the relevant inquiry is whether postexpiration arbitration is negated by clear implication. *See South Bay Boston Mgmt.*, 587 F.3d at 43. KPJ argues that the Arbitration Clause does not survive the expiration of the Franchise Agreement because, when read together, the Arbitration

and Survival Clauses create an ambiguity that should be resolved against Toddle Inn, as the author of the Franchise Agreement, under state law contract principles. *See Barrett v. McDonald Invs., Inc.*, 2005 ME 43, ¶ 15, 870 A.2d 146, 149 ("[W]e have long recognized that ambiguities in a contract are to be interpreted against the drafter."). The Survival Clause states that the obligations of the parties "which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect" until they are satisfied or expire. ECF No. 3-2 at 27. KPJ reasons that because the Survival Clause does not reference the Arbitration Clause, which, in turn, does not reference the Survival Clause or postexpiration arbitration, *id.* at 27, 37-38, the Arbitration Clause does not "expressly" survive expiration and must survive, if at all, "by its nature."

The language of the Arbitration Clause is broad because it is unrestricted as to the matter of time in general, and the expiration of the Agreement in particular. Read together, the Arbitration Clause and the Survival Clause clearly imply that the parties are obligated to arbitrate any postexpiration disputes arising from their contractual relationship. The Survival Clause indicates the parties' intent that contractual obligations would extend beyond the expiration of the Agreement itself, and the broad language of the Arbitration Clause signals that arbitration is one of those obligations. Further, even if the Survival Clause did create ambiguity, as KPJ asserts, that ambiguity would not negate by clear implication the intent of the parties to engage in postexpiration arbitration. Although courts should generally "apply ordinary state-law principles that govern the formation of contracts" in deciding

6

whether parties have agreed to arbitrate a dispute, "due regard must be given to the federal policy favoring arbitration . . . ." *Dialysis Access Ctr.*, 638 F.3d at 376. In keeping with this, "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." *Id.*

Because the parties' dispute has arisen from their contract and, as written, the Arbitration Clause fairly implies that postexpiration disputes will be submitted to arbitration, the issues raised by Toddle Inn's complaint are subject to arbitration.

**B.  Scope of the Arbitration Agreement**

The Arbitration Clause in the Franchise Agreement encompasses "all disputes between or among the parties." ECF No. 3-2 at 37 (all capitalization removed). "The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Consigli*, 873 F. Supp. 2d at 412 (quoting *MSAD No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 55 (D. Me. 2002)). That is not the case here. Thus, the dispute falls within the scope of the arbitration agreement.

**C.  Waiver of the Right to Arbitration**

"A party may waive arbitration expressly or implicitly." *In re Citigroup, Inc.*, 376 F.3d 23, 26 (1st Cir. 2004). KPJ asserts that Toddle Inn has waived its right to arbitrate by its conduct. "In determining whether a conduct-based waiver has occurred, [courts] ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party

7

would suffer unfair prejudice." *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014). "The party advocating waiver has the burden of demonstrating prejudice." *Id*. The relevant factors in analyzing a claim of conduct-based waiver include:

> the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

*Id*. No single factor predominates in the analysis. *In re Citigroup, Inc.*, 376 F.3d at 26. "As federal policy strongly favors arbitration of disputes, a waiver is not to be lightly inferred, thus reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration." *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005) (internal alteration and quotation marks omitted).

KPJ argues that Toddle Inn implicitly waived its right to arbitration by taking actions inconsistent with that right, including filing its complaint; seeking what amounts to damages by asking the court to order that KPJ pay money that is allegedly owed to Toddle Inn; and sending a letter to KPJ seeking the preservation of any evidence in its possession, which KPJ characterizes as a request for discovery.

Considered in the context of the Franchise Agreement, Toddle Inn's conduct is not inconsistent with its right to arbitration. The Injunctive Relief Clause, Section 22.8 of the Franchise Agreement, expressly preserves Toddle Inn's right to pursue injunctive relief, "notwithstanding the Arbitration Clause." ECF No. 3-2 at 38 (all

8

capitalization removed). Even if, as KPJ asserts, Toddle Inn's demand for the payment of money in its complaint exceeded the scope of Section 22.8, there has been no showing that KPJ has been prejudiced by it.

In evaluating prejudice in this setting, the First Circuit's decision in *Joca-Roca Real Estate* is instructive. 772 F.3d at 948-51. There, "the plaintiff commenced a civil action, vigorously prosecuted it, and then—after many months of active litigation—tried to switch horses midstream to pursue an arbitral remedy." *Id.* at 948. During the eight months that the plaintiff delayed, "the parties conducted sixteen depositions, propounded and answered interrogatories, and produced and exchanged thousands of pages of documents." *Id.* at 947. The district court concluded that the defendant had been prejudiced based on the length of the delay and the significant litigation activity that had taken place. *Id.* at 950-51. In upholding the district court's finding that the plaintiff had implicitly waived its right to arbitration, *id.* at 951, the First Circuit observed that "[e]arly notice of intent to pursue arbitration tends to mitigate prejudice by allowing the opposing party to seek prompt resolution of the arbitrability question or consider circumscribed discovery." *Id.* at 950.

The situation presented here is far removed from that considered in *Joca-Roca Real Estate*. Toddle Inn has not engaged in undue delay and an "unremitting pursuit of litigation," but rather invoked its right to arbitration early in the proceeding. *Id.* Toddle Inn filed its motion seeking arbitration less than a month after filing its complaint and motion for a TRO. KPJ will not be unfairly prejudiced if arbitration supplants litigation at this early stage, given that the parties have not yet engaged

9

in any formal discovery. The preservation letter from Toddle Inn that KPJ characterizes as a request for discovery is the type customarily exchanged between lawyers at the outset of litigation, and is, at most, a precursor to formal discovery.

Considering the relevant factors in the context of this litigation and resolving all reasonable doubts in favor of arbitration, I conclude that Toddle Inn has not waived its right to arbitrate this dispute.

### III. CONCLUSION

For the above reasons, Toddle Inn's Motion to Compel Arbitration and to Stay Pending Arbitration (ECF No. 16) is **GRANTED**. All proceedings before this Court are **STAYED** pending the outcome of arbitration. It is further **ORDERED** that the parties shall file a report every six (6) months detailing the status of the arbitration proceeding.

**SO ORDERED.**

**Dated this 11th day of December, 2018.**

                                                                                  /s/ JON D. LEVY
                                                                             **U.S. DISTRICT JUDGE**